TIMOTHY COURCHAINE
United States Attorney
District of Arizona
JACQUELINE SCHESNOL
Assistant U.S. Attorney
Arizona State Bar No. 016742
Email: jacqueline.schesnol@usdoj.gov
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

United States of America,

                              Plaintiff,

        v.

Andrew Moon,

                              Defendant.

CR-22-00700-001-PHX-DWL

**GOVERNMENT'S MOTION FOR EMERGENCY STAY AND REVIEW OF RELEASE ORDER OF DEFENDANT ANDREW MOON**

The United States of America, by and through its undersigned attorneys, pursuant to 18 U.S.C. § 3145(a) moves this Court to stay the Southern District of California ("SDCA") Magistrate Judge Jill L. Burkhardt's October 7, 2025, release order of Defendant Moon.

On October 7, 2025, SDCA Magistrate Judge Jill L. Burkhardt ordered Defendant Moon released on $35,000 bond. Judge Burkhardt stayed the release order until noon on Friday, October 10, 2025. The United States requests this Court order the release of Defendant Moon stayed until this Court can hold a hearing to review Judge Burkhardt's ruling on release.

## PROCEDURAL HISTORY

On June 21, 2022, a grand jury in the District of Arizona returned an indictment, charging Defendants Andrew Moon and Manuel Salazar with 110 counts related to false

statements on Firearms Transaction Records.[1]  (Doc. 1.)  A summons was issued to Defendant Moon to appear on July 6, 2022, at 11:00 a.m., before Magistrate Judge John Z. Boyle.  (Doc. 7.)  On July 6, 2022, Defendant Moon failed to appear.  Counsel for Moon requested a one-week continuance, which was granted.  The initial appearance was rescheduled for July 13, 2022, at 11:00 a.m., before Magistrate Judge Michelle H. Burns.  (Doc. 8.)  On July 13, 2022, Moon again failed to appeal, and a warrant was issued for his arrest.  (Doc. 10.)

More than three years later, Defendant Moon was encountered on October 1, 2025, at the San Ysidro Port of Entry ("POE") in California entering the United States from Mexico.  Pursuant to the outstanding warrant, Moon was arrested.  Moon was brought before SDCA Magistrate Judge Jill L. Burkhardt for his initial appearance on October 2, 2025, in SDCA case number 25-mj-054140JLB.  The initial appearance was continued to October 7, 2025.  On October 7, 2025, SDCA Magistrate Judge Jill L. Burkhardt released Defendant Moon on $35,000 bond; release has been stayed until noon on October 10, 2025, pending an Order from this Court.

### FACTS

The Unites States asserts the evidence against Defendant Moon that gave rise to the Indictment includes:

Between July 16, 2021 – March 22, 2022, Defendant Moon purchased 112 known firearms and receivers from 20 different Federal Firearms Licensees ("FFLs"), in the Phoenix area.  Co-defendant Salazar purchased 41 known firearms and receivers from 12 different FFLs in the valley.  Many of the firearms purchased by Defendants Moon and Salazar were of the same make, model, and caliber firearms, particularly Glocks and also at least 30 AK-style rifles.  The purchase of similar make and models of firearms is an indication of straw purchasing.  It is estimated that Moon and Salazar collectively spent over $100,000 on these purchases. Neither Moon nor Salazar had any documented income in Arizona during the relevant time period.  According to the State of California, Moon had

---

[1] Defendant Moon in charged in Counts 1-78 of the Indictment.

some employment history during a portion of 2021, but his earnings did not support the amount of money he spent on firearms. Moon used an address in Arizona on the ATF Forms 4473, when he did not live at that address, and was believed to be living in California during the relevant time period. It is believed that Defendant Moon was bringing firearms to Mexico as his vehicle had 60 encounters at the Mexican border, mostly at the San Ysidro POE between August 2021 and March 2022. Several crossings show inbound/outbound on the same day, which is an indication of trafficking firearms to Mexico. Law enforcement obtained a search warrant for a hotel room where Defendants Moon and Salazar were observed, as well as their vehicle. In the room, law enforcement located firearms, ammunition, cash, identification. In the trunk of the vehicle, law enforcement found firearms wrapped in plastic wrap and taped with duct tape, which had been purchased the previous day. As part of the search, law enforcement seized two phones from Defendant Moon during a search, one phone had an assigned U.S. number, and one phone had an assigned Mexican number. Moon's phone with the Mexican number had a lengthy text message discussion with another Mexican telephone number: On March 1, 2022, Moon stated that he's leaving for Mexicali in an hour, that his only job is "the toys," and that he's looking for another job so that it doesn't "look weird" and so it will look like he has money to "buy." A week later, he discussed prices and profit margins for "AKs" and "Rs." A few days later, MOON appeared to give a price for 10 Glock 19s, 10 AK 47s, 20 Glock magazines, and 20 AK magazines "in Mexicali." A few days later, the two discussed how "hot" the road is, that they need drivers, and discussed the option of various people they know being drivers and whether their cars were suitable. The phone with the Mexican number also contained a WhatsApp conversation with a different Mexican phone number, in which Defendant Moon stated that he is selling "toys" like crazy. The other person appeared to place an order for 9 Glocks at "900/1000" each and stated that they will resell them "down here" for a small profit. Moon then stated that he needed more people to work for him, to go to gun stores to buy guns and "drivers to move them . . . to mx." Moon stated that it is "an easy grand in one day" and that he will "hide it in their car good" and "they

just drive it in." Finally, the phone contained notes with lists of guns with what appear to be prices and lists of guns next to the names of FFLs where Moon had made purchases. Another note says, "Manny 8," followed by a list of 8 FFLs where co-defendant Manuel Salazar had made purchases.

As a result of this evidence, Defendant Moon was indicted for Conspiracy, Dealing Firearms Without a License, and 75 counts of False Statements During the Purchase of a Firearm.

Of the firearms Defendant Moon purchased, several were recovered the following day during the search. Approximately eight firearms were recovered at various dates and locations in the possession of someone other than Moon. This includes two firearms that were recovered in Texas and six firearms that were recovered in Mexico.

Defendant Moon was escorted from Mexico into the United States at the San Ysidro POE, on October 1, 2025. There he was turned over to the custody of Customs and Border Protections, where he was arrested based on the outstanding warrant. In the U.S. Customs and Border Protection report, Moon was determined to have no currency, and his residential address was listed as "transient." Moon was ultimately turned over to the United States Marshals Service and transported to court for his initial appearance. As stated above, on October 7, 2025, SDCA Magistrate Judge Jill L. Burkhardt released Defendant Moon on $35,000 bond. The release order has been stayed until noon on October 10, 2025, pending an Order from this Court.

## LAW

Pursuant to the Bail Reform Act, Title 18, United States Code, Sections 3141 *et seq.*, a defendant shall be detained pending trial if, after a hearing, the judicial officer finds that no condition or set of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community. A finding of dangerousness must be supported by clear and convincing evidence. A finding of a risk of flight must be supported by a preponderance of the evidence. *United States v. Hazime*,

762 F.2d 34, 37 (6th Cir. 1985) ("between flight and dangerousness . . . the clear and convincing evidence standard applies only to the latter").

The Bail Reform Act mandates that four factors be considered by courts when deciding whether pretrial detention is appropriate: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g).

Title 18, United States Code, Section 3145(a) states: If a person is ordered released by a magistrate,…(1) the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release…The motion shall be determined promptly. On the government's motion to review a release order, this Court considers *de novo* the magistrate judge's denial of pre-trial detention, as if the Court were reviewing its own action. *See United States v. Thibodeaux*, 663 F.2d 520, 522 (5th Cir. 1981); *see also United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985) ("In our view a district court should fully reconsider a magistrate's denial of bail and in ruling on a motion for revocation or amendment of a detention order should not simply defer to the judgment of the magistrate, but reach its own independent conclusion.").

Accordingly, in its discretion, this Court may proceed to rehear the evidence to support detention by recalling the witnesses, reviewing transcripts, or by proceeding through proffer and argument. *See United States v. Little*, 235 F. Supp. 3d 272, 277 (D.D.C. 2017). It may take additional evidence from new witnesses or consider arguments not raised previously. *Id*. In short, the Court may proceed as best enables it to resolve the question posed: whether any condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, considering the rebuttable presumption of detention applicable to the defendant.

**ARGUMENT**

Defendant Moon should be detained.

***Bail Reform Act***

**(1) Nature and Circumstances of the Offense**

As set forth in the facts above, the offenses with which Moon is charged are serious. He purchased over a hundred firearms between July 2021 and March 2022. There is evidence that he trafficked some of the firearms to Mexico. If Defendant Moon is convicted of even one of the 78 counts with which he is charged, he faces several years' incarceration. Such exposure creates a powerful incentive to flee. *See*, *e.g.*, *United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990) ("Facing the much graver penalties possible under the present indictment, the defendants have an even greater incentive to consider flight.").

**(2) Weight of the Evidence**

The weight of the evidence against Moon is strong. The government has proof he used a false address on dozens of ATF Forms 4473, he was found with firearms, border crossing records show a history of Moon's travel to Mexico, analysis of Moon's phone shows communication with a Mexican phone number regarding firearms, and firearms were traced to Mexico.

**(3) History and Characteristics of the Defendant**

In 2020, Defendant Moon was arrested with over $18,000 of undeclared currency traveling into Mexico from the United States. The currency was seized; no charges were filed against Moon. In the case at hand, Moon was timely indicted for his role in purchasing over a hundred firearms. He did not appear for Court in Arizona pursuant to a summons, and a warrant was issued for his arrest in July 2022. More than three years later he was apprehended.

**(4) Nature and Seriousness of the Danger Posed by the Defendant's Release**

Defendant Moon is both a serious risk of flight and a danger. Moon should be detained.

***Review of a Release Order***

This Court can review the release order.

Title 18, U.S.C. § 3145(a) states,

If a person is ordered released by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court

(1) the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release

The motion shall be determined promptly.

On the government's motion to review a release order, this Court considers *de novo* the Magistrate Judge's denial of pre-sentence detention. *United States v. Koenig*, 912 F.2d 1190, 1191 (9th Cir. 1990). In its discretion, the Court may proceed to rehear the evidence by recalling the witnesses, reviewing transcripts, or by proceeding through proffer and argument. It may take additional evidence from new witnesses or consider arguments not previously raised. In short, the Court may proceed as best enables it to resolve the question posed: whether any condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community. As the legislative history of the 1984 Bail Reform Act amendments shows:

> [T]he language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community. The committee intends that the concern about safety be given a broader construction than merely danger of harm involving violence.

*See* S.Rep. No. 225, 98th Cong., 2d Sess. 307, reprinted in 1984 U.S. Code Cong. & Ad. News 3182, 3195-3196.

**CONCLUSION**

The Government respectfully requests the Court to grant the Government's Motion to Stay the Order of Release and to hold and detain Defendant Moon pending the *de novo* detention hearing at the Court's convenience.

Respectfully submitted this 8th day of October 2025.

TIMOTHY COURCHAINE
United States Attorney
District of Arizona

*s/ Jacqueline Schesnol*
JACQUELINE SCHESNOL
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on this same date, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Mark Berardoni
*Counsel for Defendant*

*s/Jacqueline Schesnol*
U.S. Attorney's Office

- 8 –